UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA

        v.

EDWARD BEDROS,

        Defendant.
-----------------------------------------------------X
EDWARD G. BEDROS,

        Plaintiff,

        v.

WARDEN P. LAIRD,

        Defendant.
-----------------------------------------------------X

**MEMORANDUM & ORDER**

**06-CR-249 (NGG)**

**07-CV-836 (NGG)**

GARAUFIS, District Judge.

Edward Bedros moves this court to dismiss a one-count indictment that charges him with attempting to enter the United States in violation of 8 U.S.C. § 1326. For the reasons set forth below, Bedros's motion is DENIED. Bedros's petition for a writ of *habeas corpus*, which is based on the same arguments as is the motion to dismiss, is TRANSFERRED to the United States Court of Appeals for the Second Circuit ("Second Circuit").

**I.     Background**

Bedros was born in Egypt in 1948 and was a legal resident of the United States from 1978 until 2005. (Bedros Br. at 2; Govt. Br. at 2.) According to the Government, Bedros was arrested eleven times during that period, including five arrests for sexual offenses, and was convicted seven times, including three convictions for sexual offenses. (Govt. Br. at 2-4, 29.) The eleventh

1

arrest, for touching the buttocks of a ten-year-old girl in 2002, led to Bedros's 2004 conviction in New Jersey Superior Court of one count of Endangering the Welfare of a Child, N.J. Stat. Ann. § 2C:24-4(a), and one count of Child Abuse, N.J. Stat. Ann. §§ 9:6-1, 9:6-3. (Govt. Br. at 4; Bedros Br. at 2.)

Following this conviction, the Immigration and Naturalization Service ("INS") charged Bedros with being a deportable alien under 8 U.S.C. §§ 1227(a)(2)(A)(iii) (deportability based on conviction for an aggravated felony) and 1227(a)(2)(E)(i) (deportability based on conviction for child abuse).[1] (Bedros Br. at 2-3.) On January 26, 2005, the Honorable Annie S. Garcy, United States Immigration Judge, ruled that Bedros was deportable based on his conviction for child abuse but reserved decision as to whether Bedros had committed an aggravated felony. (Govt. Br. at 6-7; Govt. Ex. B at 17; Bedros Br. at 4.) On February 9, 2005, Judge Garcy ruled that Bedros had committed an aggravated felony and was deportable on that ground, too. (Govt. Br. at 7; Govt. Ex. D at 3; Govt. Ex. E; Bedros Br. at 5.) Also on that date, Judge Garcy informed Bedros that because he was an aggravated felon, he could not apply for cancellation of removal, although she informed him that he could appeal her finding of deportability.[2] (Govt. Ex. D at 6-7; Bedros Br. at 5.) Bedros did not appeal and appears to have waived his right to appeal. (Govt. Ex. D at 7; Bedros Br. at 5-6.)

---

[1] The INS was abolished on March 1, 2003, when its functions were transferred to the Department of Homeland Security. See Recinos De Leon v. Gonzales, 400 F.3d 1185, 1187 n.4 (9th Cir. 2005) (citing Homeland Security Act of 2002, Pub. L. 107-296, § 471, 116 Stat. 2135, 2204-05; 6 U.S.C. § 542). For convenience and consistency, I will adopt the parties' terminology and refer to the entity seeking removal as the "INS."

[2] The statute governing cancellation provides, "The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien . . . has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3).

Bedros was deported on August 12, 2005. (Govt. Br. at 2; Bedros Br. at 5-6.) The Government alleges, and at this time Bedros does not dispute, that he attempted to re-enter this country from Egypt on March 16, 2006. (Compl. ¶ 2; Indictment.)

## II.   Analysis

The parties agree that Bedros's motion is an attempt to collaterally attack a deportation order. (Bedros Br. at 10; Govt. Br. at 10.) An alien mounting such an attack must show that–

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); see also United States v. Lopez, 445 F.3d 90, 94 (2d Cir. 2006). Bedros attempts to satisfy these elements by arguing that he was incompetent when he appeared before Judge Garcy and that he was not convicted of an "aggravated felony" within the meaning of 8 U.S.C. § 1227(a)(2)(A)(iii), such that Judge Garcy erred in telling Bedros that he was ineligible for cancellation of removal. (Bedros Br. at 1.)

I will address in turn each of the three elements of a Section 1326(d) collateral attack. I find that Bedros cannot satisfy the first and third elements.

### A. Exhaustion of Administrative Remedies

It is undisputed that Bedros failed to appeal Judge Garcy's decision. (Bedros Br. at 10-15; Govt. Br. at 11-17.) In fact, Bedros expressed on the record his desire not to appeal:

Judge Garcy: I need to know, do you understand that I have ordered your deportation, your removal to Egypt?

Bedros: Yes, sir, okay. Yes.

Judge Garcy: Now, do you want to file papers to try to stop that; in other words, you can ask for what is called an appeal?

Bedros: No.

Judge Garcy: Well, if you accept the decision as final, then you will be taken to Egypt as soon as possible.

Bedros: Okay.

Judge Garcy: I don't know when.

Bedros: Well, I just want to know when I'm going to go to Egypt so I can start living again.

(Tr. of Proceedings held Feb. 9, 2005 (Govt. Ex. D) at 15-16.) Because he declined to appeal Judge Garcy's order of deportation, Bedros cannot satisfy the exhaustion element of his collateral attack, and his motion to dismiss the indictment must be denied. United States v. Johnson, 391 F.3d 67, 74-77 (2d Cir. 2004) (affirming denial of motion to dismiss indictment on sole ground that defendant waived his right to appeal an Immigration Judge's order of deportation); see also Spence v. United States, 431 F. Supp. 2d 296, 300-01 (N.D.N.Y. 2006) (denying petition for writ of *habeas corpus* where petitioner, who had been convicted of unlawful reentry, expressed a desire at his removal hearing to return to Jamaica rather than appeal the Immigration Judge's order of deportation).

Bedros argues that his failure to exhaust administrative remedies should be excused because it "was not knowing or intelligent, as he was incompetent in the [] proceedings [before Judge Garcy] and there was sufficient information in the record which should have tipped off" Judge Garcy as to Bedros's incompetence. (Bedros Br. at 11.) Bedros cites as support U.S. v. Lopez, 445 F.3d 90, 98-100 (2d Cir. 2006) and U.S. v. Calderon, 391 F.3d 370, 374-75 (2d Cir. 2004), in which the Second Circuit held that a defendant's waiver can be excused if it was not "knowing and intelligent." In further support, Bedros offers the reports of Dr. Jason Hershberger, who concludes that Bedros is unfit to stand trial and was insane when he re-entered the country. (Hershberger Rpts. dated July 24, 2006 and February 19, 2007.) The Government argues that Bedros has not offered sufficient evidence that he was incompetent at the time of the removal proceeding because Dr. Hershberger did not examine Bedros until two and a half years after that proceeding ended. (Govt. Br. at 13-14.)

The court agrees with the Government. Dr. Hershberger's reports, which are based on examinations that significantly post-date the deportation proceedings at issue, do not constitute evidence regarding Bedros's competence at the time of those proceedings. Furthermore, I have independently reviewed the transcripts of the proceedings conducted by Judge Garcy. I find that Bedros was able to understand Judge Garcy and to answer her questions, and that Judge Garcy had no cause to make a finding of incompetence.

Bedros also argues that because he was incompetent, he was entitled to an attorney pursuant to 8 C.F.R. § 1240.4 and 8 U.S.C. § 1229a(b)(4)(A)). (Bedros Br. at 13-14.) This argument fails. Section 1240.4 provides, "When it is impracticable for the respondent to be present at the hearing because of mental incompetency, the attorney, legal representative, legal

5

guardian, near relative, or friend who was served with a copy of the notice to appear shall be permitted to appear on behalf of the respondent." This provision does not apply because it was practicable for Bedros to be present at his deportation hearings – in fact, he was there. Section 1229a(b)(4)(A) provides that "the alien [in a removal proceeding] shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings[.]" This provision does not constitute a basis for excusing Bedros's waiver of appeal. This provision creates a privilege, not a right. In other words, it provides that Bedros may be represented by a lawyer at a removal hearing, but it does not obligate an Immigration Judge or the Government to provide or pay for such representation.[3]

Bedros's motion could be denied on the sole basis of his failure to exhaust administrative remedies. United States v. Johnson, 391 F.3d 67, 74-77 (2d Cir. 2004) (waiver of appeal was knowing and intelligent despite Immigration Judge's possibly misleading statement about availability of cancellation of removal); Spence v. United States, 431 F.Supp.2d 296, 300-02 (N.D.N.Y. 2006) (waiver of appeal was knowing and intelligent even though he was not informed that he was eligible to apply for cancellation of removal, assuming *arguendo* that he

---

[3] Judge Garcy provided Bedros several opportunities to obtain counsel. She adjourned the first deportation hearing in order to permit Bedros to attempt to find a lawyer. (Tr. of Proceedings held Jan. 12, 2005 (Govt. Ex. A) at 16-19.) At the conclusion of the second deportation hearing, Judge Garcy implored Bedros to retain a lawyer to argue the issue of whether Bedros had committed an aggravated felony:

> You have $100,000.00 in the bank and you have not hired a lawyer. Mr. Bedros, if you have money to hire a lawyer you should hire a lawyer so you have someone on your side in this very serious case. . . . So please, if you can take any of the money that you do have, if you have any, or if you have any family or friends that can help you, then hire a lawyer.

(Tr. of Proceedings held Jan. 26, 2005 (Govt. Ex. B) at 25-26.)

was in fact eligible). I will nevertheless consider the second and third elements of his collateral attack.

B. **Opportunity for Judicial Review**

Bedros argues that he was denied an opportunity for judicial review of Judge Garcy's decision because "Bedros was clearly incompetent and his *pro se* waiver of his right to appeal was clearly not well considered or intelligent," as required by U.S. v. Mendoza-Lopez, 481 U.S. 828 (1987). (Bedros Br. at 15.) In that case, the Supreme Court held that "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." Mendoza-Lopez at 838. In other words, the Government can use Judge Garcy's deportation order to prove unlawful reentry only if Bedros had an opportunity to seek judicial review of that order.

As already noted, Bedros failed to appeal Judge Garcy's decision even though he was informed of his right to do so. In addition, Bedros concedes that he could have filed a habeas petition during the five-month period between the issuance of Judge Garcy's order and Bedros's deportation. (Bedros Br. at 16-17.) He argues, however, that because he was incompetent, the relevant period is the one-day period between his retention of counsel and his deportation. (Id. at 15-16.) This argument fails. As discussed *supra* at 5-6, Bedros cannot show incompetence and was not entitled to a lawyer, though he was free to use one had he been able to obtain one. "Thus, once [Bedros] received a final order of removal, he could have sought judicial review of his deportation through a habeas petition[.]" Lopez, 445 F.3d at 93; see also id. at 95-96 (no requirement that Immigration Judge inform deportee of right to *habeas corpus* review).

7

Bedros argues that this element is nevertheless satisfied because Judge Garcy erred in informing him that as an aggravated felon, he was ineligible to apply for cancellation of removal. Bedros may be correct. The Second Circuit has held that an Immigration Judge's affirmative misstatement that a deportee is not eligible for cancellation of removal can constitute a denial of judicial review even if the deportee was able, but failed, to petition for a writ of *habeas corpus*. Id. at 96-100. The effect of the availability of *habeas corpus* review depends on the length of the interval between the deportation order and deportation, which in this case was five months. Id. at 97 (citing United States v. Copeland, 376 F.3d 61, 68 (2d Cir. 2004). The Second Circuit has held that a one-month interval was so short that the defendant had been denied an opportunity for judicial review. United States v. Sosa, 387 F.3d 131, 138 (2d Cir. 2004). In Lopez, in which the defendant had been erroneously informed by an Immigration Judge that he was not eligible for cancellation of removal, the Second Circuit found that the defendant was denied an opportunity for judicial review even though twenty months passed between the dismissal of his appeal of a deportation order and his actual deportation. Lopez at 100.

Whether Judge Garcy erred is a difficult question that this court need not answer.[4] For the purpose of resolving Bedros's motion to dismiss, this court will assume that she did and that Bedros was therefore denied an opportunity for judicial review of his order of deportation.[5]

### C. Fundamental Unfairness

An alien collaterally attacking a deportation order must show that the order was fundamentally unfair. 8 U.S.C. § 1326(d)(3). This element "requires a showing of both a fundamental procedural error and prejudice resulting from the error." U.S. v. Lopez, 445 F.3d 90, 100 (2d Cir. 2006) (citations and quotation marks omitted). I will address each requirement in turn.

#### 1. Fundamental Procedural Error

Bedros argues that the deportation hearing was fundamentally unfair because Judge Garcy failed to recognize that Bedros was incompetent and therefore failed to implement "procedural safeguards." (Bedros Br. at 17.) As already discussed *supra* at 5-6, this argument fails because the statutes at issue do not to compel the safeguard Bedros would have liked, *i.e.*, court-appointed counsel.

---

[4] The Third Circuit recently held that, contrary to Judge Garcy's decision, Endangering the Welfare of a Child is not an "aggravated felony." Stubbs v. Attorney General of the United States, 452 F.3d 251 (3d Cir. 2006). The Government argues Stubbs, which the Government concedes was contrary to the Judge Garcy's conclusion that Bedros committed an aggravated felony, is neither binding on this court nor persuasive. (Govt. Br. at 21-27.).

[5] I note that some case law would support a finding that this element has not been satisfied. See United States v. Gonzalez-Roque, 301 F.3d 39, 49-50 (2d Cir. 2002) (defendant cannot show that he was deprived of opportunity for judicial review where he had opportunity to file a *habeas corpus* petition even though that right was not firmly established at the relevant time); United States v. Gallegos-Cosio, 363 F.Supp.2d 388, 393 (N.D.N.Y. 2005) (defendant cannot show that he was deprived of opportunity for judicial review where he waived, on the record, his right to appeal).

Bedros also argues that the deportation order was fundamentally unfair because Judge Garcy erred in informing him that he was ineligible to apply for cancellation of removal. As discussed *supra* at 9, this court will, for the purpose of resolving this motion, assume that Judge Garcy erred in stating that Bedros was ineligible to apply for cancellation. Such a misstatement can constitute a "fundamental procedural error," see United States v. Copeland, 376 F.3d 61, 70-75 (2d Cir. 2004), and for the purpose of deciding this motion, the court will assume that such an error was made.

### 2. Prejudice

To satisfy the element of prejudice, Bedros must show "a reasonable probability that, but for the IJ's unprofessional errors," Bedros would have been granted cancellation of removal. Copeland at 73. A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." United States v. Scott, 394 F.3d 111, 118 (2d Cir. 2005) (citation and quotation marks omitted). The question this court must answer, therefore, is whether there is a reasonable probability that Bedros would have been granted cancellation had he applied for it upon receiving Judge Garcy's order of deportation. Id.; United States v. Sosa, 387 F.3d 131, 138 (2d Cir. 2004).

Cancellation of removal is discretionary. Determining whether cancellation is appropriate–

> involves a balancing of the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of [cancellation] appears in the best interests of this country. Adverse factors include: the nature and circumstances of the exclusion ground at issue, the presence of additional immigration law violations, the existence of a criminal record and its nature, recency and seriousness, and the presence of other evidence indicative of an alien's bad character or undesirability as a permanent resident. Favorable considerations include: family ties within this country, residence of long duration in this country,

> arrival in the country at a young age, evidence of hardship to the alien and the alien's family upon deportation, Armed Forces service, employment history, community service, property or business ties, evidence attesting to good character, and, in the case of one convicted of criminal conduct, proof of genuine rehabilitation.

Copeland at 74 (2d Cir. 2004) (citations and quotation marks omitted).

The Government's position is supported by several "adverse factors." Bedros has an extensive criminal record spanning much of his time in this country, and Bedros's bad character and undesirability are further demonstrated by his use of four birth dates and three social security numbers and his violation of the conditions of his probation. (Govt. Br. at 29-30.)

Bedros offers argument supporting only one factor favoring his position, that being his employment history. At oral argument, Bedros's attorney represented that Bedros has "held a job consistently at Wilson's House of Carpets in New Jersey." (Tr. of Proceedings held April 17, 2007 at 10.) Assuming *arguendo* that this factor favors cancellation as strongly as it possibly could, it is still not reasonably probable that Bedros would be granted cancellation. Bedros simply cannot satisfy any other factors that would support that outcome. He has no family ties within this country; his residence in this country, though of long duration, has been punctuated by repeated arrests and convictions; he arrived in this country at the age of thirty rather than as a child; he offers no evidence that his deportation would impose a hardship on him or on any members of his family; he has not served in the Armed Forces; he has offered no evidence of community service, property or business ties; he has offered no evidence of good character; and his repeated arrests and convictions suggest strongly that has not been genuinely rehabilitated. Bedros has not attempted to argue to the contrary – presumably because he cannot – and has instead argued that his conviction, though "serious," "stems from a mental illness." (Bedros Br.

11

at 18; see also Tr. of Proceedings held April 17, 2007 at 10.) That may be correct, but it is not a fact that would support cancellation of removal. Bedros also argues that he "was not thought by the sentencing judge to have been such a danger to society that he should be incarcerated for his improper action[;] rather[,] the sentencing judge sentenced Bedros to three (3) years probation, and lifetime community supervision." Although the court appreciates that Bedros is not Charles Manson, it would be peculiar to find that the commission of a crime favors cancellation rather than deportation.

### III. Habeas Petition

Bedros filed a petition for a writ of *habeas corpus* based on the same grounds that support his motion to dismiss the indictment. Bedros v. Laird, 07-CV-836 (NGG). The Second Circuit recently explained that–

> Congress enacted the REAL ID Act on May 11, 2005. This Act eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review under [8 U.S.C.] § 1252, which circuit courts alone can consider. By its express terms, the Act is retroactive and applies to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of enactment. In addition, with respect to cases pending before a district court on the date of enactment, [the Act] directs that these petitions be transferred to the court of appeals in which a petition for review could have been properly filed. In these circumstances, the court of appeals should treat the transferred case as if it had been filed pursuant to a petition for review under § 1252.

Gittens v. Menifee, 428 F.3d 382, 384-85 (2d Cir. 2005) (citations and quotation marks omitted). This court is therefore barred from considering Bedros's *habeas* petition. Although that petition was not filed before passage of the Real ID Act, in the interest of justice, this court transfers

12

Bedros's *habeas* petition to the United States Court of Appeals for the Second Circuit.[6] 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action or appeal could have been brought at the time it was filed or noticed."); cf. Torres v. Senkowski, 316 F.3d 147, 151 (2d Cir. 2003) (district courts shall transfer successive *habeas* petitions to the Second Circuit).

IV.     **Conclusion**

For the aforementioned reasons, Bedros's motion to dismiss the indictment is DENIED and his petition for a writ of *habeas corpus* is TRANSFERRED to the Second Circuit. The Clerk of Court is directed to close Bedros's *habeas* case, Bedros v. Laird, 07-CV-836 (NGG).


SO ORDERED.

Dated:  August 23, 2007                     /s/ Nicholas G. Garaufis
        Brooklyn, N.Y.                     NICHOLAS G. GARAUFIS
                                           United States District Judge

---

[6] To the extent that Bedros's *habeas corpus* petition is properly before this court, the court denies that petition on the same grounds upon which it denies Bedros's motion to dismiss the indictment. Cf. Spence, 431 F. Supp. 2d at 300-01 (applying Section 1326(d) analysis to deny a post-conviction petition for a writ of *habeas corpus*).